**SNYDER v. HELVERING, Commissioner of Internal Revenue.**

**No. 6012.**

Court of Appeals of the District of Columbia.
Argued Jan. 17, 1934.
Decided Feb. 5, 1934.

Jesse I. Miller, of Washington, D. C., for petitioner.

John H. McEvers, Walter L. Barlow, E. B. Prettyman, and Sewall Key, all of Washington, D. C., for respondent.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

This petition presents the question of the construction of the following provisions of the Revenue Act of 1926:

Section 204 (a) (5), 44 Stat. 14, 26 USCA § 935 (a) (5):

"The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that—

"(5) If the property was acquired by bequest, devise, or inheritance, the basis shall be the fair market value of such property at the time of such acquisition. The provisions of this paragraph shall apply to the acquisition of such property interests as are specified in subdivision (c) * * * of section 302 [section 1094] of this title."

Section 302 (c), 44 Stat. 70, 26 USCA § 1094 (c), provides:

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property * * *—

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. * * *"

The question for decision under this statute is the proper basis for determining the profit on the sale by petitioner of certain shares of stock received by her from her husband in contemplation of death. The facts are these:

Petitioner's husband died September 2, 1927. Six months prior thereto he had, in contemplation of death and without consideration, transferred to petitioner 5,000 shares of the stock of a corporation of the then value of $138,125. Petitioner, as executrix, filed a federal estate tax return in which she included in the gross estate for the purpose of computing the federal estate tax the same shares of stock which her husband in contemplation of death had given her six months earlier. The stock as of the date of the husband's death was of the value of $156,250, and the estate tax was paid on that valuation. In December of the same year, petitioner sold the stock for $164,700.

The Board held that the basis for determining the gain was the value of the stock at the time of the gift. Petitioner insists it is the value as of the death of her husband. The precise question appears not to have been decided. Several cases in the Supreme Court, however, are helpful in determining the congressional intent in the passage of the statutes, and we shall turn to these for what light they throw upon the subject.

In the case of Heiner v. Donnan, 285 U. S. 312, 52 S. Ct. 358, 359, 76 L. Ed. 772, the Supreme Court had under consideration the question of the constitutionality of a provision of the income tax law making it a conclusive presumption that all transfers of property in excess of $5,000 made within two years of the death of the donor were so made in contemplation of death. To answer this query the court had occasion to define the difference between pure gifts inter vivos and gifts in contemplation of death and, referring to the section we are considering, said:

"The value of property transferred without consideration and in contemplation of death is included in the value of the gross estate of the decedent for the purposes of a death tax, because the transfer is considered to be testamentary in effect. Milliken v. Unit-

ed States, 283 U. S. 15, 23, 51 S. Ct. 324, 75 L. Ed. 809. But such a transfer, not so made, embodies a transaction begun and completed wholly by and between the living, taxable as a gift (Bromley v. McCaughn, 280 U. S. 124, 50 S. Ct. 46, 74 L. Ed. 226), but obviously not subject to any form of death duty, since it bears no relation whatever. to death. The 'generating source' of such a gift is to be found in the facts of life and not in the circumstance of death. And the death afterward of the donor in no way changes the situation; that is to say, the death does not result in a shifting, or in the completion of a shifting, to the donee of any economic benefit of property, which is the subject of a death tax, Chase Nat. Bank v. United States, 278 U. S. 327, 338, 49 S. Ct. 126, 73 L. Ed. 405, 63 A. L. R. 388; Reinecke v. Northern Trust Co., 278 U. S. 339, 346, 49 S. Ct. 123, 73 L. Ed. 410, 66 A. L. R. 397; Saltonstall v. Saltonstall, 276 U. S. 260, 271, 48 S. Ct. 225, 72 L. Ed. 565; nor does the death in such case bring into being, or ripen for the donee or any one else, so far as the gift is concerned, any property right or interest which can be the subject of any form of death tax. Compare Tyler v. United States, 281 U. S. 497, 503, 50 S. Ct. 356, 74 L. Ed. 991, 69 A. L. R. 758. Complete ownership of the gift, together with all its incidents, has passed during the life of both donor and donee, and no interest of any kind remains to pass to one or cease in the other in consequence of the death which happens afterward.

"The phrase 'in contemplation of or intended to take effect * * * at or after his death,' found in the provisions of section 302 (c) of the act of 1926 and prior acts, as applied to fully executed gifts inter vivos, puts them in the same category for purposes of taxation with gifts causa mortis. In this light, the meaning and purpose of the provision were considered, in a recent decision of this court dealing with the Revenue Act of 1918 (40 Stat. 1057). United States v. Wells, 283 U. S. 102, 116, 117, 118, 51 S. Ct. 446, 451, 75 L. Ed. 867."

What is quoted above can only mean that property transferred in contemplation of death is placed by the provisions of this statute precisely in the same category as property passing by devise, bequest, or inheritance, and this because the transfer is considered to be testamentary in effect. This is further emphasized in the Wells Case, 283 U. S. 102, 51 S. Ct. 446, 75 L. Ed. 867, where it is said if the motive be the thought of death the gift is testamentary and,. because it is, the right to impose a death tax is sustainable

(Milliken Case, 283 U. S. 15, 20, 51 S. Ct. 324, 75 L. Ed. 809). Clearly in a case in which the motive is not the thought of death, the section of the act under consideration would have no application at all. The question then is whether the basis for ascertaining gain or loss is the same in the case of these two different testamentary forms of transfer of property.

In Brewster v. Gage, 280 U. S. 327, 50 S. Ct. 115, 116, 74 L. Ed. 457, the Supreme Court held, in the case of bequests of personal property subsequently sold, the basis of gain was the value of the property as of the date of the death of testator. The words "at the time of such acquisition" were defined to mean not actual delivery but the time of death. In that case it was urged by the taxpayer that the time of "acquisition" was the date of distribution, that the title to personal property, not specifically bequeathed, together with the possession, the right to collect the income, and the power to sell, passes to the executor or administrator and not to the residuary legatee; that in such a case, all the residuary legatee acquired is the right to an honest administration of the estate and a vested right to participate eventually in the residuum if there should be any, and that to adopt the view of the government would be to increase or decrease the taxpayer's income on account of changes in the value of property before it is subject to the control or disposition of the taxpayer. In answer to this, the court said that upon the death of the owner there vests in the distributees a right to a distributive share of so much as remains after a proper administration and that notwithstanding the postponement of transfer of the legal title, Congress had power to fix value at the time title passed from the decedent as the basis for determining gain or loss. Careful reading of the opinion in this case makes it evident that the court was led to take this view in large measure because of the provision of the Treasury regulation which had been in effect for more than ten years. The regulation to which the court refers provided that "for the purpose of determining the profit or loss from the sale of property acquired by bequest, devise, or descent since February 28, 1913, its value as appraised for the purpose of the Federal estate tax should be deemed to be its fair market value when acquired," and the court said: "A reversal of that construction would be likely to produce inconvenience and result in inequality."

In the case under consideration neither the government nor the taxpayer has referred us

to any Treasury regulation, but by reference to the printed regulations under the Revenue Act of 1926, we find that there is a regulation which it seems to us covers perfectly the question we have to answer. The regulation is article 1594 of regulations 69. It is as follows:

"In computing the gain or loss from the sale or other disposition of property acquired by * * * bequest, devise, or inheritance, the basis shall be the fair market price or value of such property at the time of acquisition. The term 'property acquired by bequest, devise, or inheritance' as used herein includes:

"(a) Such property interests as the taxpayer has received as the result of a transfer * * * in contemplation of * * * death. * * *

"In the case of property acquired by bequest, devise, or inheritance, its value as appraised for the purpose of the Federal estate tax * * * shall be deemed to be its fair market value when acquired."

This regulation in so many words provides that property transferred in contemplation of death, like property acquired by bequest, devise, or inheritance, shall, for the purpose of computing the gain or loss from sale, be deemed to have been "acquired" as of the date of its appraisal for the purpose of the federal estate tax; in other words that the term "when acquired" shall have relation in either case to the death of the decedent.

It appears to us that this regulation is reasonable and a fair interpretation of the statute. The unquestioned purpose of the latter was to fix a definite period from which to compute profit on the next succeeding sale. The section in question includes in various preceding paragraphs the rule as to other classes of property. It couples in the applicable paragraph gifts in contemplation of death with bequests and inheritances, and makes its provisions apply alike to both. We think that by this segregation from the others and by this coupling together Congress has manifested here, as it has in the provisions in relation to estate taxes, the purpose to treat such a gift, because of its testamentary character, as taking effect like inheritances at death and therefore like inheritances acquired then.

The fact that the Revenue Act 1928 (45 Stat. 818, 819, § 113 [26 USCA § 2113]) establishes in the case of inheritances the fair market value at the time of distribution does not affect the question we are considering. The Supreme Court has already said this clearly indicates a change of the law was intended. Brewster v. Gage, supra, at page 337 of 280 U. S., 50 S. Ct. 115.

In this view, the decision of the Board of Tax Appeals must be reversed.

Reversed.